**THE GOLAN FIRM**
Yvette Golan (*pro hac vice*)
1919 Decatur St.
Houston, Texas  77007
Telephone:       (866) 298-4150, ext. 101
Facsimile:       (928) 441-8250
Email:            ygolan@tgfirm.com

**REESE RICHMAN LLP**
Kim E. Richman
Michael R. Reese
875 Avenue of the Americas, 18th Floor
New York, New York  10001
Telephone:       (212) 643-0500
Facsimile:       (212) 253-4272
Email:            krichman@reeserichman.com
                  mreese@reeserichman.com

*Counsel for Plaintiff Erin Silber and the Proposed Classes*

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
Juan E. Monteverde
Javier O. Hidalgo
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone:   212-983-9330
Facsimile:   212-983-9331
Email:       nfaruqi@faruqilaw.com
             jmonteverde@faruqilaw.com
             jhidalgo@faruqilaw.com

*Counsel for Plaintiff Olympia Moro and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ERIN SILBER, on behalf of herself and all others similarly situated,<br>                        Plaintiff,<br>    v.<br>BARBARA'S BAKERY, INC.,<br>                        Defendant. | Case No. 1:12-cv-05511-WFK-RLM<br><br>**SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF PLAINTIFF ERIN SILBER'S MOTION FOR PRELIMINARY INJUNCTION** |
| OLYMPIA MORO, on behalf herself and all others similarly situated,<br>                        Plaintiff,<br>    v.<br>BARBARA'S BAKERY, INC.,<br>                        Defendant. | Case No. 1:12-cv-06087-WFK-RLM |

*DATE OF SERVICE: MAY 23, 2013*

1

Plaintiff Erin Silber served Barbara's Bakery, Inc. ("Barbara's" or "Defendant") a Motion for Preliminary Injunction on March 18, 2013. *See* Dkt. No. 31 ("Motion"). Plaintiff Olympia Moro later joined in that Motion. *See Moro v. Barbara's Bakery, Inc.*, No. 1:12-cv-06087-WFK-RLM (E.D.N.Y.), Dkt. 25. In opposing the Motion, Barbara's asks this Court to allow its false labeling to continue, hoping the Court will be satisfied that the labeling may be corrected in a few years. Plaintiffs Silber and Moro (together, "Plaintiffs") ask this Court to, instead, hold Barbara's to the letter of the law to protect consumers.

*First*, even assuming the proposed settlement in *Trammell v. Barbara's Bakery, Inc.*, No. 3:12-cv-02664-CRB (N.D. Cal.) (the "Trammell Settlement") is approved, the false labels will conceivably continue until 2015, if not later. Barbara's does not—and cannot—give any legitimate reason why its illegal conduct should continue for so long. **Second**, United States Supreme Court precedent makes clear that such a promise of voluntary cessation does not moot a motion to enjoin. ***Third***, the unlawfulness of Defendant's conduct is clear here. Courts, consumers, and federal agencies all agree that synthetic and artificial ingredients are not natural. Barbara's does not dispute that the ingredients in its products are indeed synthetic. Thus, Barbara's cannot dispute that labeling its products as "All Natural Since 1971" is deceptive and false when those products contain synthetic ingredients. ***Fourth***, under New York law, false advertising constitutes irreparable harm to the public. Furthermore, the Second Circuit Court of Appeals has held that denying a preliminary injunction of false advertising is an abuse of discretion, even if monetary relief can cure the economic harm. ***Fifth***, despite Barbara's efforts to use the Trammell Settlement to circumvent Plaintiffs' consumer protection claims, Plaintiffs' motion covers ingredients and other issues not addressed by the Trammell Settlement. ***Finally***,

2

an injunction need not be unduly burdensome. The false labels can be corrected by cost-effective means, such as placing stickers on existing labels for the products at issue.

**I. The Trammell Settlement Does Not Give the Relief Plaintiffs Request in Their Motion To Enjoin.**

Barbara's urges this Court that "the relief requested by this motion will be covered by the Trammell Settlement." (*See* Transcript from May 7, 2013, Hearing ("May 7 Tr."), at 34:23-24.) This is not true. Indeed, if Barbara's has agreed, through the Trammell Settlement, to do what Plaintiffs are requesting, *then why does Barbara's oppose Plaintiffs' Motion?* As Defendant's attorney explains: "The only difference is timing." (May 7 Tr. at 30:24.) However, instead of leaving the timing of the labeling change to this Court's determination, Barbara's prefers to set its own schedule of working through its current inventory of false and deceptively labeled products and using the imprimatur of the Trammell Settlement to circumvent Plaintiffs' pending claims. Barbara's gives no reason why its false labeling should continue for so long. Barbara's has cited no legal authority for its request to write its own schedule to stop its violations, nor for its continued delay in complying with the law.

Not surprisingly, Barbara's has given itself a relaxed schedule that allows it to sell off its falsely labeled products at a premium, avoiding many of the costs of the changing its false labels and, thereby, increasing its ill-gotten gains. By the Trammell Settlement, it need not change its labeling until well into next year, if not later. *See Trammell v. Barbara's Bakery, Inc.*, No. C12-02664-CRB (N.D. Cal.), Dkt. No. 36, at 16 (requiring label modification three months after final settlement approval or March 2014, "whichever is later"). Indeed, the Trammell Settlement specifically allows Barbara's to sell off its falsely labeled inventory *even after* the settlement's labeling change date is triggered. *See id.* ("[S]ales of Eligible Products already in inventory prior to the Final Settlement Date or March 1, 2014, whichever is later, shall not constitute a violation

3

of this Agreement."); (*see also* May 7 Tr. at 31:1-3 ("[I]n the Trammell settlement . . . we're going to stop producing these boxes, we'll work through the inventory and it will be phased out . . .")). Given the shelf life of consumer products, some falsely labeled products could still linger on store shelves for months.

Furthermore, approval of the Trammell Settlement is not a foregone conclusion, notwithstanding Defendant's assertions that it will withstand any scrutiny. Nor is the settlement, of course, immune from appeal by an objector. In fact, the Ninth Circuit has recently taken a hard look at class action settlements. *See, e.g.*, *In re HP Inkjet Printer Litig.*, No. 11-16097, 2013 WL 1986396 (9th Cir. May 15, 2013) (reversing district court's approval of class action settlement where attorneys' fees attributable to coupon relief were calculated without first calculating the redemption value of the coupons); *Radcliffe v. Experian Information Solutions Inc.*, No. Nos. 11–56376, 11–56387, 11–56389, 11–56397, 11–56400, 11–56440, 11–56482, 2013 WL 1831760, at *1, ___ F.3d ___ (9th Cir. Apr. 22, 2013; mod. May 2, 2013) (reversing district court's approval of class action settlement where incentive awards to plaintiffs were conditioned upon the plaintiffs' support for the settlement agreement).

Moreover, the Trammell Settlement seeks to apply California law to a nationwide class of consumers. The Ninth Circuit's recent decision in *Mazza v. American Honda Motor Company, Inc.*, however, indicates that such a maneuver is unlikely to withstand the rigorous analysis required for certification of a Rule 23 class. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 585 (9th Cir. 2012) (vacating class certification order and holding that "the district court erred because it erroneously concluded that California law could be applied to the entire nationwide class").

**II. The Trammell Settlement Does Not Moot Plaintiffs' Motion.**

Barbara's argues in effect that its third-party promise with Richard Trammell, which it can revoke any time, moots Plaintiffs' Motion. It has cited no legal authority for this argument, nor can it. Courts do not allow a defendant to avoid an injunction even if it in fact *changed* its behavior.

Under the well-known voluntary cessation doctrine, "[a] defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 174, 120 S. Ct. 693, 700, 145 L. Ed. 2d 610 (U.S.S.C. 2000) (holding group's suit for injunctive relief and civil penalties was not mooted by defendant's compliance with law). "It is for the court to say whether the plaintiff shall be compelled to accept his assurance that he will not resume what he should not have begun." *N.L.R.B. v. Gen. Motors Corp.,* 179 F.2d 221, 222 (2d Cir. 1950) (holding negotiations by defendant and union did not moot suit for injunction and request for enforcement order). Its post-motion strategic maneuverings "suggest[] an attempt by the [Barbara's] to conjure up an argument for mootness and thwart adjudication of the issue." *Ahrens v. Bowen*, 852 F.2d 49, 53 (2d Cir. 1988) (holding that defendant's voluntary cessation did not moot case).

**III. Defendant's Labels Are Clearly False and Deceptive.**

**A. Consumers, Courts, and Federal Agencies Agree that the Term "Natural" Excludes – at the Very Least – Synthetic and Artificial Ingredients.**

Whether an ingredient is so processed that it can no longer be considered to be "natural" is an interesting question, but it is a question not raised by Plaintiffs' Motion. Plaintiffs do not challenge ingredients as being so heavily processed that they can no longer be considered to be "natural." Plaintiffs do not challenge, for example, soy protein isolates or corn syrups. (*See* Dkt.

5

No. 31 at 263 (list of challenged ingredients).)  By narrowly focusing their Motion, Plaintiffs avoid the "too-processed-to-be-natural" question.

Instead, Plaintiffs cast their Motion squarely in the scientifically objective area of synthetic and artificial ingredients.  Here, there is no debate.  Courts, agencies, and consumers **all** define "natural" as meaning – at the very least – nothing artificial or synthetic.

### 1. Federal Agencies Define "Natural" as Excluding Synthetic and Artificial Ingredients.

While the FDA has not provided an exhaustive regulatory definition of "natural," the agency *has* repeatedly stated that it

> has considered "natural" to mean that nothing artificial or synthetic (including all color additives regardless of source) is included in, or has been added to, the product that would not normally be expected to be there.  For example, the addition of beet juice to lemonade to make it pink would preclude the product being called "natural."

*Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 340 (3d Cir. 2009) (holding similar "all natural" claims could continue despite exhaustive agency definition), *quoting* 58 Fed. Reg. 2,302, 2,407 (Jan. 6, 1993).  The FDA has issued warning letters to companies that label their foods as "natural" but contain synthetic ingredients.  *See, e.g.*, FDA Warning Letter to Snapple Natural Beverage Co., March 9, 1992 ("The term 'all natural' is false or misleading on products containing the added chemical preservatives, ascorbic acid, or added citric acid."); FDA Warning Letter to Oak Tree Farm Dairy, Inc., August 16, 2001 ("The term 'all natural' on the [lemonade] label is inappropriate because the product contains potassium sorbate.").

The USDA has defined "synthetic" and "nonsynthetic (natural)," as well.  By regulation, a "nonsynthetic (natural)" substance is "[a] substance that is derived from mineral, plant, or animal matter and does not undergo a synthetic process as defined in section 6502(21) of the Act (7 U.S.C. 6502(21))."  7 C.F.R. § 205.2.  And a "synthetic" substance is "[a] substance that is

6

formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes." *Id.*

Confusing "natural" with "organic," Barbara's argues that some of these ingredients are permitted to be included in organic foods. However, these ingredients themselves are *not* organic. Instead, the USDA has permitted certain synthetic ingredients to be included in organic foods. 7 C.F.R. § 205.605. These regulations allow, for example, sodium acid pyrophosphate to be added to organic foods, a non-agricultural and a synthetic ingredient. 7 C.F.R. § 205.605(b). Thus, a product that is correctly labeled as "organic" is *not* necessarily also "natural." Correspondingly, consumer polls have shown that consumers value the term "natural" over the term "organic," and will pay more for "natural" products. (*See* Dkt. No. 31, at 56.)

### 2. Courts and Consumers Define "Natural" as Excluding Synthetic and Artificial Ingredients.

Reasonable consumers also similarly define "natural" as, at the very least, excluding artificial and synthetic compounds. The dictionary, for example, defines "natural" as:

- "existing in or formed by nature (opposed to artificial): *a natural bridge*,"[1]

- "being or made from organic material; not synthetic: *a natural fibre like cotton*,"[2] and

- "not artificially dyed or coloured: *a natural blonde*."[3]

---

[1] Dictionary.com Unabridged Random House, Inc., *available at* http://dictionary.reference.com/browse/natural (retrieved on May 22, 2013).

[2] Collins English Dictionary - Complete & Unabridged 10th Edition. HarperCollins Publishers, *available at* http://dictionary.reference.com/browse/natural (accessed: May 22, 2013).

[3] *Id.*

7

Case law has similarly been guided by this dictionary understanding, holding that the term "all natural" can raise a deceptive advertising claim when the products contained just *processed* ingredients, such as corn syrup, alkalized cocoa, and *trans* fat. *See, e.g.*, *Williams v. Gerber Products Co.,* 552 F.3d 934 (9th Cir. 2008) (reversing dismissal of breach of warranty and unfair competition claims challenging "all natural" toddler snacks containing corn syrup and sugar); *Holk v. Snapple Beverage Corp.,* 575 F.3d 329, 339 (3d Cir. 2009) (reversing dismissal of "all natural" iced tea containing high fructose corn syrup); *Von Koenig v. Snapple Beverage Corp., 713* F. Supp. 2d 1066, 1080 (E.D. Cal. 2010) (denying motion to dismiss similar claims of "all natural" beverages containing high fructose corn syrup); *Lockwood v. Conagra Foods, Inc.,* 597 F. Supp. 2d 1028 (N.D. Cal. 2009) (denying motion to dismiss similar claims regarding "all natural" pasta sauce containing high fructose corn syrup); *Astiana v. Ben & Jerry's Homemade, Inc.,* C 10-4387 PJH, 2011 WL 2111796 at *3-4 (N.D. Cal. May 26, 2011) (denying motion to dismiss similar claims regarding "all natural" ice cream containing alkalized cocoa); *Henderson v. Gruma Corp.,* CV 10-04173 AHM AJWX, 2011 WL 1362188 at *11 (C.D. Cal. Apr. 11, 2011) (denying motion to dismiss similar claims regarding "all natural" bean dip containing transfats).

### B.  The Ingredients in Barbara's Products Are Synthetic.

Barbara's does not contend that the ingredients Plaintiffs challenge are not synthetic.  It does not contend that the ingredients are natural. (*See* May 7 Tr. at 25:18-26:16.)  Instead, Barbara's argues that it shouldn't matter—an argument that does not hold muster under fact or the law. (*See* Dkt. No. 31 (Motion to Enjoin) at 14-16 (discussing materiality).)

Barbara's also fails to disclose that many of the so-called "vitamins" added to their products are **not** the same chemical compound as the vitamin it is claimed to be.  Vitamins

8

existing naturally in foods can rarely be isolated and then added to other foods. As Barbara's conceded at the May 7th Hearing, vitamins cannot be scooped up from a natural product (like a fruit) and added to another product (like a cereal). (May 7 Tr. at 23:22-25.)

Barbara's chides Plaintiffs for not submitting expert testimony showing that the challenged ingredients are synthetic. (May 7 Tr. at 25.) Yet Barbara's does not contend that the challenged ingredients are not synthetic, nor even address Plaintiffs' Motion for Judicial Notice in Support of their Motion for Preliminary Injunction (Dkt. No. 31, at 334-38). Because the challenged ingredients are synthetic, they cannot be natural. *See, supra*, Sec. III.A.1 (documenting federal agencies' and court definitions of "natural" as – at the very least – excluding synthetic and artificial ingredients).

No expert could credibly opine otherwise. These facts are subject to judicial notice. *See* 44 U.S.C. § 1507 ("[t]he contents of the Federal Register **shall** be judicially noticed . . .") (emphasis added); *U.S. v. Gould*, 536 F.2d 216, 220 (8th Cir. 1976) (holding district court could judicially notice a drug's classification as a controlled substance under federal regulations, affirming court's refusal to allow jury to disregard the judicially noticed fact); *The Pantry, Inc. v. Stop-N-Go Foods, Inc.*, 777 F. Supp. 713, 733 (S.D. Ind. 1991) (taking judicial notice of federal regulation classifying benzene as a carcinogen).

However, even if Barbara's were able to lodge a coherent argument that the challenged synthetic ingredients are somehow "natural," the labels are still deceptive to the reasonable consumer. Even if the labels are truthful in some esoteric, technical sense, they nonetheless violate GBL § 349 because they are misleading. *See Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 405 (E.D.N.Y. 2010) (holding food manufacturer violates GBL § 349 where the label accurately states the product's weight but the package size misleadingly suggests that the

9

consumer is getting more); *People ex rel. Spitzer v. Gen. Elec. Co., Inc.*, N.Y.S.2d 520, 523 (2003) (affirming injunction under § 349 of true statements under some "dictionary definition").

**IV. Allowing the False Advertising to Continue During the Trammell Settlement Process Constitutes Irreparable Harm.**

    **A. The False Labeling Would Continue for at Least Another Year, and the Sale of Falsely Labeled Products is Presumed to Constitute Irreparable Harm.**

The Trammell Settlement enables Barbara's to continue selling its falsely labeled Products for *at least* another year, and likely much more. *See*, *supra*, Sec. I. These years of false advertisements injure not only the public but also competing companies who honestly label their Products. This is *presumed* to be irreparable harm. Even cases relied upon by Barbara's recognize that "[w]hen a plaintiff has shown a 'high probability of confusion,' there is normally a **presumption** of irreparable harm." *Tough Traveler, Ltd. v. Outbound Products*, 60 F.3d 964, 967 (2d Cir. 1995) (emphasis added).

The Second Circuit abhors false advertising so much that it has repeatedly *reversed* the denial of preliminary injunctions, holding the district court abused its discretion. *See Coca-Cola Co. v. Tropicana Prods., Inc.,* 690 F.2d 312, 317 (2d Cir. 1982) (reversing denial of preliminary injunction to halt false advertisement that juice was fresh-squeezed when it was in fact pasteurized); *Johnson & Johnson v. GAC Int'l, Inc*., 862 F.2d 975, 982 (2d Cir. 1988) (reversing denial of preliminary injunction of false advertisements of a bracket as "polysapphire" when it was in fact polycrystalline); *accord Schering Corp. v. Pfizer Inc.,* 189 F.3d 218, 229 (2d Cir. 1999) (reversing denial of preliminary injunction).

10

### B.  Potential Monetary Relief Does Not Bar Preliminary Injunctive Relief.

Barbara's argues that injunctive relief is barred because monetary relief is available. Barbara's is incorrect. The mere availability of monetary relief does not bar preliminary injunctive relief.

In false advertising cases, courts have resoundingly held that preliminary injunctive relief is available to cure false advertising, even though monetary relief is also available to cure the economic harm. *See Coca-Cola Co.,* 690 F.2d at 317; *Johnson & Johnson*, 862 F.2d at 982, *Schering Corp.,* 189 F.3d at 229; *Nature's Bounty, Inc. v. SuperX Drugs Corp.*, 490 F.Supp. 50, 53-54 (E.D.N.Y. 1980) (granting preliminary injunction, enjoining marketing of food supplements because plaintiff had shown "sufficiently serious questions going to the merits" of his unfair competition claim).

To hold otherwise would effectively nullify N.Y. Gen. Bus. Law § 349(h)'s grant of injunctive relief and the statute's purpose of encouraging private enforcement and deterring deceptive business practices. As aptly explained in *McDonald v. N. Shore Yacht Sales, Inc.*, the statute:

> gives an individual the right to seek injunctive relief and also indicates the Legislature contemplated and intended to encourage small claims. However, it is highly unlikely that any person whose damage is less than $50 could ever prove irreparable injury. Therefore, to apply this criterion to each individual claim would render almost meaningless the right to injunctive relief for small claims which the statute clearly provides.

513 N.Y.S.2d 590, 595 (N.Y. Sup. Ct. 1987) (enjoining deceptive yacht advertisements, concluding that "a very significant number of consumers could be adversely affected by the false advertisement placed by this defendant. This constitutes sufficient irreparable injury to warrant preliminary relief."); *see also Aponte v. Raychuk,* 140 Misc. 2d 864, 869-70, 531 N.Y.S.2d 689, 693 (N.Y. Sup. Ct. 1988) (enjoining attorney's misleading advertisements, holding "the

consuming public also requires protection which plaintiffs seek to enforce. The equities balance in the public's favor over defendant's private economic interest"), *aff'd*, 160 A.D.2d 636, 559 N.Y.S.2d 255 (1990).

**V. The Trammell Settlement Does Not End Plaintiffs' Class Action or Other Claims, as the Trammell Settlement Does Not Give Plaintiffs the Remedies They Seek.**

Finally, the Settlement does not address other forms of relief that Plaintiffs seek, including corrective advertising and/or Product reformulation. Barbara's has created for itself a (false) reputation of being "All Natural Since 1971," a brand identity consumers will remember and assume even after the "natural" representations quietly disappear. Product reformulation or corrective advertising is needed, but the Trammell Settlement provides for neither. The Trammell Settlement promises that a very small percentage of products will eliminate GMOs and requires only a fraction of its Products to be enrolled in an independent program that tests for genetically modified ingredients. Of the 111 Products included in the Settlement, only 26—less than a quarter—need be enrolled in the program and tested for genetic modification. *Compare* Trammell Settlement at 6-8 (listing the 111 Products included in the Settlement), *with id.* at 18-19 (listing the 26 Products that are to be enrolled in the Non-GMO Verified Project).

The Trammell Settlement also does not make all the labeling changes Plaintiffs' request. For example, the Trammell Settlement does not cover disodium phosphate and monocalcium phosphate, ingredients included in Plaintiffs' motion (and in Barbara's Products) (*see* Dkt. 31 at 263) but excluded from the Settlement. *See* Trammell Settlement at 33 (omitting these two ingredients from its definition of "synthetic ingredients").

## VI.  The Injunction is Not a Recall and Can Be Implemented Efficiently by Corrections to Existing Packages.

Barbara's objects to Plaintiffs' proposed terms of the injunction, classifying the injunction as a "recall" that is inappropriate because the food itself is still safe for human consumption. (May 7 Tr. at 17:21-18:7.)  Plaintiffs' proposed preliminary injunction does no such thing.

The contents of the boxes need not be destroyed; the package representations need only be corrected.  One option, for example, is requiring Barbara's to place a sticker on its packages that correct its deceptive advertising.  This option is widely used in other countries and in states that have already adopted GMO labeling requirements.  *See* Alaska Stat. § 17.20.040 (requiring labeling of genetically modified fish); EU Labeling Requirements, *available at* http://www.food.gov.uk/policy-advice/gm/gm_labelling#anchor_2.

Similarly here, Barbara's can comply with the injunction by correcting its labels through stickers.  Barbara's could put a small blue sticker over its new logo, which would cover the "All Natural" representation on its "All Natural Since 1971" logo:



Similarly, the side labels may be corrected by covering up the false representation as so:



To correct the other false "all natural" representations that are too large to be covered by a sticker, Barbara's could place a corrective sticker on the product's package, stating, "This product contains artificial ingredients and may contain genetically modified ingredients."

[CONTINUED ON NEXT PAGE]

14

As an example, Plaintiffs proffer the following picture, which is of a Cheerios box in Europe with a sticker indicating the product may contain GMOs:



15

## **CONCLUSION**

For the foregoing reasons and the reasons stated in the opening brief and reply brief filed in support of Plaintiff Silber's Motion for a Preliminary Injunction, Dkt Nos. 31, 31-2, Plaintiffs Erin Silber and Olympia Moro respectfully request this Court grant Plaintiff Silber's Motion for Preliminary Injunction.

Dated: May 23, 2013                                                  Respectfully submitted,

**THE GOLAN FIRM**

  /s/ Yvette Golan
Yvette Golan (*pro hac vice*)
1919 Decatur St.
Houston, Texas  77007
Telephone:     (866) 298-4150, ext. 101
Facsimile:      (928) 441-8250
Email:            ygolan@tgfirm.com

**REESE RICHMAN LLP**
Kim E. Richman
Michael R. Reese
875 Avenue of the Americas, 18th Floor
New York, New York  10001
Telephone:     (212) 643-0500
Facsimile:      (212) 253-4272
Email:            krichman@reeserichman.com
                      mreese@reeserichman.com

*Counsel for Plaintiff Erin Silber*

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
Juan E. Monteverde
Javier O. Hidalgo
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone:     212-983-9330
Facsimile:      212-983-9331
Email:            nfaruqi@faruqilaw.com
                      jmonteverde@faruqilaw.com
                      jhidalgo@faruqilaw.com

*Counsel for Plaintiff Olympia Moro*

16

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, the undersigned hereby certifies that on May 23, 2013, the foregoing document was served via ECF to all parties of record in the action captioned *Silber v. Barbara's Bakery, Inc.*.

*/s/ Kim E. Richman*
Kim E. Richman